ROBERT G. McKINNEY AND BETTY J. McKINNEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKinney v. Commissioner
Docket No. 15292-82.
United States Tax Court
T.C. Memo 1984-467; 1984 Tax Ct. Memo LEXIS 203; 48 T.C.M. (CCH) 1009; T.C.M. (RIA) 84467; September 4, 1984. Robert C. McKinney, pro se. Steve Mather, for the respondent. PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) [1] and General Order No. 8 of this Court, 81 T.C. XXIII (1983). Respondet determined deficiencies in petitioners' 1977, 1978 and 1979 Federal income tax and additions thereto as follows: Addition to Tax
Year
Deficiency
Sec.6653(a)
1977
$1,022.00
$ 51.00
1978
$ 998.00
$ 50.00
1979
$2,905.00
$145.00
In his Amendmet to Answer filed on April 20, 1984, respondent alleged that the correct deficiencies and additions thereto are as follows: [2]
Addition to Tax
Year
Deficiency
Sec.6653(a)
1977
$ 989.00
$ 49.00
1978
$3,174.00
$159.00
1979
$4,215.00
$211.00
The issues for decision are (1) whether *205 respondent's determination that income and deductions reported by the Rossmoor Family Trust should be reallocated to petitioners' individual income tax returns should be sustained; (2) whether petitioners are liable for the addition to tax for negligence under section 6653(a); and (3) whether damages should be awarded to the United States pursuant to section 6673. At the time of filing their petition herein, petitioners resided at Los Alamitos, California. On September 26, 1977, petitioner Robert McKinney (hereinafter Robert) has grantor-creator, executed a Declaration of Trust purporting to create a trust named "Rossmoor Family Trust". Petitioner Betty J. McKinney (hereinafter Betty) and John J. Vnuk were named as trustees. Approximately one week after formation of the trust, Robert replaced John J. Vnuk as trustee. Both Robert and Betty remained trustees through approximately the end of 1978 when Robert's sister Florence Drury succeeded Robert as trustee. The declared purpose of the trust was as follows: The declared purpose of the Trustees of THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, *206 conveyed by the creator hereof and grantor hereto to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and all of his earned remuneration accruing therefrom, from any current source whatsoever, so that [signature Robert C. McKinney] can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which [signature - Robert C. McKinney] feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. Other pertinent provisions of the trust provided as follows: This Trust is expressly irrevocable, and may not be altered or amended in any respect unless specifically authorized by this instrument, and it may not be terminated except through distributions permitted by this instrument. * * * This Trust shall continue for a period of twenty-five years from date, unless The Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion because of threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve *207 trust assets, liquidate the assets, distribute and close The Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries. * * * The Trust instrument gives the trustees broad powers. Among other provisions the trustees "By their resolution of purpose may perform and function for any purpose on behalf of any individual, group or combination of individuals, severally or collectively." The Declaration of Trust was signed by Robert as creator and grantor and witnessed by Betty and John J. Vnuk. The Declaration of Trust was recorded at the Mariposa County records office on December 28, 1977. The beneficial interests were divided into 100 units. At the time of the Declaration of Trust the 100 units were issued to Robert. On September 26, 1977, the same date as the Declaration of Trust, Robert conveyed 50 units to his wife Betty. On the same date certificates of beneficial interest were conveyed and reconveyed to the children of petitioners so that the units of beneficial interest were held as follows: Robert
8
Betty
20
Children [3]
72
At some later date which is not indicated *208 in the record Robert conveyed his remaining 8 units to one of the children. At or about the time of the Declaration of Trust, four pieces of real property were deeded to the trust. Properties known as Angwin and St. Albans were land including residential houses which were unfurnished. The third piece of property deeded to the trust was known as the Aseca property which is a six bedroom home where petitioners resided. Approximately 47 percent of the property was rented. The fourth property was unimproved real estate known as the Mariposa property. Deeds were recorded on the transfer of all of these properties to the trust.[4]
*209 On September 26, 1977, the date of the Declaration of Trust, Robert as lessor, leased a 1972 Dodge automobile and a 1966 Mercedes Benz to the trust. Also leased was a utility trailer. The Dodge was leased at a cost of $60 per month, the Mercedes Benz at $40 per month and the utility trailer at $1.00 per year. On November 1, 1978 a 1971 Toyota was also leased to the trust at a cost of $50 per month. After formation of the trust all wages and other income were assigned to the trust. Petitioners as trustees received a fee from the trust. Petitioners testified that trustee meetings were held, however no minutes of such meetings were introduced into evidence. While petitioners discussed important trust expenditures with each other they handled routine expenditures independently. The guidelines followed by the trustees were those set forth by E. S. Publishers (ESP), the organization that published the trust instrument. See . U.S. Fiduciary Income Tax Returns (Forms 1041) were filed for the taxable years in issue. The income reported on these returns include interest income, rental income, and under other *210 income is reported wages received by petitioners. The fiduciary return characterizes this income as "contract/nominee inc." The Form 1041 also claims various deductions such as interest, taxes, depreciation, fiduciary fees, and other deductions. Under other deductions are included housing and repair maintenance, utilities, travel, trustees medical expenses, telephone, auto leasing expenses (gas, repair and maintenance), hazard insurance and office expenses. Petitioners filed individual income tax returns (Forms 1040) for the years in issue. Robert shows his occupation as an engineer/management consultant and Betty's occupation is shown as a nurse/management consultant. The returns reflect the wages paid to petitioners for the years in issue. On line 24 of the returns in issue, petitioners deduct almost the entire amount shown as wage income. The deduction is phrased in terms of "payment of nominee income to the Rossmoor Family Trust #95-6621736 as reported on Form 1087 (see attached cy)." On their Form 1040 for the taxable year 1977 petitioners claim rental income and expenses relating to an automobile lease. On their 1978 and 1979 Form 1040's, petitioners claim income and *211 expenses relating to automobile leases however no rental income or losses are shown. [5] The 1977 Form 1041 also shows rental income and expenses relating to the two houses (unidentified). Respondent in his notice of deficiency as adjusted by his Amendment to Answer reallocates income and expenses from the fiduciary return to the individual return. After this reallocation the respondent essentially disallowed three types of claimed deductions, including those determined to be payments for personal expenses, those involving costs of the trust and those characterized as rental expenses involving property used by petitioners as their residence. [6]
*212 This Court has had an opportunity on a number of prior occasions to consider the effect of a family trust for Federal income tax purposes. In the case of , this Court stated: Technical considerations and legal niceties of the law of trusts which petitioners seek to hide behind will not obstruct our view when the sole purpose for this subterfuge is the avoidance of Federal income tax. To be sure, a taxpayer has the legal right to minimize his taxes or avoid them totally by any means which the law permits. . Howevr, this right does not bestow upon the taxpayer the right to structure a paper entity to avoid tax when that entity does not stand on the solid foundation of economic reality. When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction. , affd. per curiam . * * * In , *213 a case decided the same day as , we discuss the primary principal of taxation that income must be taxed to the one that earns it. . and cases cited therein. Accordingly, there is no doubt that respondent correctly determined that petitioners are required to include wages and salaries in gross income and that they are not entitled to deduct these amounts because of any contractual obligation they might have to pay these amounts to the family trust. With respect to other items of income and expenses, we must look to the provisions of section 671 and section 677. We fully discuss the application of these provisions in . These provisions provide that if the grantor of a trust retains certain powers, then for income tax purposes he is treated as the "owner" of the portion of the trust over which the prescribed powers extend. Section 674(a). While Robert is the creator and grantor of the trust pursuant to the declaration of trust, property *214 belonging to Betty was transferred to Robert for purposes of conveyance as part of the trust corpus. This transfer was an integral step in the creation of the trust. Thus, Betty in actuality is a co-grantor of the trust. , affg. a Memorandum Opinion of this Court; , affd. per curiam . [7]
We are satisfied that petitioners retained control over the trust. At the inception of the trust, petitioners owned 100 percent of the beneficial interest. As grantors they had the power of disposition thus invoking section 674(a). From approximately one week after the declaration of trust, petitioners were the sole trustees until at least late 1978. Robert's sister, Florence Drury, replaced Robert as trustee in late 1978. Florence does not qualify as an adverse party [8] because she did not have a substantial beneficial interest in the trust. Accordingly, since the grantor trust provisions apply, petitioners are taxable on all other *215 income including interest and rental income. On their 1977 amended income tax return, petitioners claimed expenses in the amount of $2,500 for trust formation. This deduction was characterized as an educational endowment. It is clear that such an amount is a nondeductible personal expense. ; ; . With respect to the addition to tax for negligence under section 6653(a), the burden of proof is on petitioners to rebutt respondent's determination. . Considering the wealth of opinions relating to family trust issues, we are satisfied that the underpayment of tax is due to negligence and intentional disregard of the rules and regulations. See Hanson v. Commissioner,supra at 1234. In his Amendment to Answer, *216 respondent also seeks damages under section 6673. Since the petition in this case was filed on September 1, 1982, section 6673 in its version prior to amendment is applicable. That section provided as follows: Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. Based on the entire record we are not satisfied that this action was instituted by petitioners merely for delay, and accordingly, damages under section 6673 are not imposed. [9]
Decision will be entered for the respondent. *217 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Respondent's Motion for Leave to File Amendment to Answer was granted on April 20, 1984.↩
3. Although not entirely clear from the record, some if not all of the children, were those of Betty by a former marriage. Robert testified that 56 units were held by such children, however, it is not clear at what point in time this occurred.↩
4. While the record is not entirely clear on this point petitioners testified that some of the properties had been owned by Betty prior to the declaration of trust. Two of the properties were acquired subsequent to their marriage in 1974. In any event Betty transferred any property interests she had to Robert for the purpose of ultimately transferring the property to the trust.↩
5. It is noted that on the Form 1041 for the taxable years 1978 and 1979, petitioners claim income and expenses relating to three rental properties. These properties are identified as the Angwin, St. Albans and Aceca properties.↩
6. It is noted that the adjustment made by respondent in his Amendment to Answer reduce the deficiency for 1977, however result in increased deficiencies for 1978 and 1979. At trial and in response to the Court's inquiry, petitioners advised that they did not dispute the accuracy of the adjustments set forth in the Amendment to Answer. Thus, if respondent's primary position with respect to reallocation of income and expenses to the trust is sustained, we do not need to further discuss adjustments in the Amendment to Answer. Furthermore based on their agreement to these facts respondent has satisfied his burden of proof with respect to the claim for increased deficiencies and additions for 1978 and 1979.↩
7. See also .↩
8. Section 672(a) defines an adverse party as "any person having a substantial beneficial interest in the trust which would affected by the exercise or nonexercise of the power which he possesses respecting the trust."↩
9. If petitioners should seek to present a similar claims before this Court for a later year, they should be advised that section 6673 has been amended. See section 292 Pub. L. 97-248, 96 Stat. 324. The damage award has been increased to $5,000 and also the circumstances for application of the damage award has been expanded.↩